UNITED STATES DISTRICT COURT                    O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

ARTIS RYAN MILLER,                    §
                                      §
        Petitioner,                   §
v.                                    §        CIVIL ACTION NO. 5:11-cv-68
                                      §        CRIMINAL ACTION NO. 5:08-cr-347
UNITED STATES OF AMERICA.             §
                                      §
                                      §

## OPINION AND ORDER

Pending before the Court is Artis Ryan Miller's ("Miller") "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody."[1]   After careful consideration of Miller's motion, the record, the facts of the case, and the relevant authorities, the Court **DISMISSES** the motion with prejudice.

**I.      PROCEDURAL BACKGROUND**

On March 18, 2008, a federal grand jury in Laredo, Texas, returned an indictment charging Artis Ryan Miller with conspiring to possess with intent to distribute in excess of one thousand kilograms of marijuana and possessing with intent to distribute in excess of one hundred kilograms of marijuana.[2]   On July 29, 2008, a jury found Miller guilty on both counts.[3] The Court sentenced Miller to 240 months imprisonment and 5 years of supervised release on each count (to run concurrently).[4]   Miller appealed his case, and the Fifth Circuit affirmed the

---

[1] Dkt. No. 1.  ("Dkt. No." refers to the docket number entry for the Court's electronic filing system.  The Court will cite to the docket number entries rather than the title of each filing.  Unless stated otherwise, "Dkt. No." will be used to refer to filings in the civil case number 5:11-cv-68.  "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:08-cr-347).
[2] Cr. Dkt. No. 10.
[3] Cr. Dkt. No. 95.
[4] Cr. Dkt. No. 158.

judgments of conviction.[5]  On June 22, 2011, Miller filed his 28 U.S.C. § 2255 motion.[6]  Miller organized his motion into nineteen grounds.[7]

## II.   DISCUSSION

"Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[8]  Generally, § 2255 claims fall under four categories: (1) challenges to the constitutionality or legality of a sentence; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.[9]  After conducting an initial examination of the motion, the Court must dismiss "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ."[10]   In his motion, Miller claims that many errors were committed in his case by his attorney and the Court.

### A.    Motion to Supplement & Withdrawal of Ground Nineteen

On January 31, 2013, the Court ordered the government to respond to a portion of the self-styled "Ground Nineteen" of Miller's § 2255 motion.[11]  The same day, the clerk received Miller's motion to supplement his § 2255 motion to which he attached an affidavit and additional documents.[12]  The affidavit purports to supplement the self-styled Grounds One through Twelve, and Nineteen of Miller's original § 2255 motion.[13]  But after Miller received the Court's January

---

[5] Cr. Dkt. Nos. 148, 198 and 199.
[6] Dkt No. 1.
[7] *Id.*
[8] United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citation omitted).
[9]  28 U.S.C. § 2255(a); *see also* United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).
[10] 28 U.S.C. § 2255, PROC. R. 4(b).
[11] Dkt. No. 4.
[12] Dkt. No. 5 and attachments.
[13] Dkt. No. 5-1.

31, 2013 order, Miller filed a motion to withdraw issue nineteen.[14]  The Court granted Miller's motion to withdraw Ground Nineteen and also deemed withdrawn the portions of Miller's motion to supplement and its attachments that were related to Ground Nineteen.[15]  Therefore, the Court will only consider Grounds One through Eighteen of Miller's original motion and will only consider the motion to supplement and its attachments to the extent they pertain to Grounds One through Eighteen.

Regarding Miller's motion to supplement, Rule 15(c) of the Federal Rules of Civil Procedure allows for relation back of issues in certain instances.[16]  The Fifth Circuit has explained that the Court "must look to whether [the movant's] new claim asserts 'a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'  If it does, then his proposed amendment does not relate back to his original pleading and is time-barred."[17]

Here, the Court has reviewed Miller's supplement and finds that it contains no new grounds for relief.  For the most part, the supplement merely adds allegations that Miller told his attorney to handle each of the allegedly mishandled situations differently.  Therefore, the Court will consider Miller's § 2255 motion *as modified* by the motion to supplement.

Recently, Miller filed a self-styled "Motion to Expand Record" to which he attached another copy of his original motion to supplement and its attachments, and four additional affidavits.[18]  Because the Court already addressed the motion to supplement, it will not do so again here.  The Court will address the four new affidavits below in Section II.C.2.d.

---

[14] Dkt. No. 11.
[15] Dkt. No. 12.
[16] FED. R. CIV. P. 15(c).
[17] United States v. Gonzalez, 592 F.3d 675, 680 (5th Cir. 2009) (quoting Mayle v. Felix, 545 U.S. 644, 650 (2005)).
[18] Dkt. No. 14 and attachments.

**B.    Factual Background**

Before addressing the merits of Miller's § 2255 motion, the Court sets out the facts of the offenses to the extent they are relevant to the issues raised by Miller.  The Court adopts the facts as presented at trial, to the extent that they support the jury's verdict.

On February 26, 2007, Johnny Lewis Brown ("Brown") and Lawanda Kelly were arrested at the I-35 checkpoint located 29 miles north of Laredo, Texas, after 271.50 kilograms of marijuana were discovered in the tractor trailer which Brown was driving and in which Lawanda Kelly was riding as a passenger.  Brown testified that he was a driver for Ferrell Damon Scott ("Scott") and that he had previously transported both marijuana and bulk currency for Scott.  Specifically, Brown testified that he hauled two other loads of marijuana for Scott before he was caught with the third load on February 26, 2007.  Brown testified that the first load of marijuana he hauled from Laredo was composed of thirty to thirty-five or more bundles of marijuana that were approximately twelve to eighteen inches long, approximately six to nine inches in diameter, and together weighed approximately six-hundred pounds.[19]  Brown testified that Lawanda Kelly accompanied him when he hauled the second load of marijuana, which weighed approximately six to seven hundred pounds, from Laredo.[20]  Brown further testified that Miller was also involved in drug trafficking with Scott.

Lawanda Kelly's testimony corroborated Brown's testimony.  She testified that she accompanied Brown on two separate trips to pick up marijuana in Laredo and that they were apprehended on the second trip.[21]

On April 4, 2007, Timothy Lavell Burks was arrested at the same I-35 checkpoint after 251 kilograms of marijuana were discovered in the cab of the tractor trailer he was driving.  The

---

[19] Cr. Dkt. No. 180 at pp. 87-103, 106-23 and 146-47.
[20] Cr. Dkt. No. 180 at pp. 123-149.
[21] Cr. Dkt. No. 180 at pp. 224-280.

tractor trailer was purchased for use by Scott.  Also recovered in connection with the seizure was a cell phone later connected to Scott.

At trial, evidence was presented that a person using the name "Artis Miller" checked into a Laredo hotel from June 15-18 and June 23-24, 2007.  Miller denied being in Laredo during that time frame, claiming instead that he was at a family meeting to plan a family reunion and then at the family reunion itself.

On August 2, 2007, a tractor trailer arrived at the Border Patrol checkpoint located west of Freer, Texas.  The tractor trailer was directed to secondary inspection, but instead of stopping at secondary, it left the checkpoint.  Border Patrol Agent Judy Sepulveda followed the tractor trailer for approximately six miles at which point it stopped.  Upon being directed to return to the checkpoint, the driver turned around and drove for about a mile back toward the checkpoint.  Suddenly, the driver stopped, made a U-turn, and headed away from the checkpoint.  The driver stopped again and started backing the tractor trailer toward Agent Sepulveda, who had been following the tractor trailer in her vehicle.  Agent Sepulveda was forced to back up her vehicle in order to avoid being struck by the tractor trailer.  After Agent Sepulveda distanced herself from the tractor trailer, the tractor trailer stopped and the driver absconded.  Approximately two hundred and sixty-eight (268) kilograms of marijuana were discovered concealed in the sleeper portion of the tractor.  Agent Sepulveda later identified Miller as the driver of the tractor trailer. Also abandoned with the tractor trailer was a cell phone later connected to Miller and the cell phone reflected calls from phones connected to Scott.  The tractor trailer was determined to have been leased for Scott's use.

**C.      Ineffective Assistance of Counsel**

Miller bases the majority of his § 2255 motion on claims of ineffective assistance of counsel.   Ineffective assistance of counsel is a violation of the Sixth Amendment right to counsel, a claim of constitutional proportion permitted under 28 U.S.C. § 2255.   Under the pertinent two-prong test, Miller must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that Miller suffered prejudice as a result.[22]   In assessing whether counsel was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[23]

Miller asserts a multitude of ineffective assistance of counsel claims.   For simplicity, the Court has organized these ineffective assistance of counsel claims into three categories: (1) before trial, (2) during trial, and (3) on appeal.

**1.      Ineffective Assistance of Counsel Before Trial**

**a.      Failure to Communicate a Plea Offer**

Here, Miller alleges that his attorney failed to properly communicate a plea offer that the government had made to him.[24]   Miller claims that had he known of the plea offer, he would have pleaded guilty instead of risking trial.[25]

To support this claim, Miller asserts that he wrote a letter to his attorney to inquire about an offer that his attorney had mentioned.[26]   Miller has thrice attached a document that is supposedly a copy of the letter Miller sent to his attorney.[27]   It is clear to the Court that the letter

---

[22] Strickland v. Washington, 466 U.S. 668, 687-88 (1984).
[23] *Id.* at 689.
[24] Dkt. No. 1, at pp. 12-13.
[25] *Id.*
[26] *Id.* at p. 12.
[27] *Id.* at p. 22; Dkt. No. 5-3; Dkt. No. 14-1 at p. 6.

is a fabrication, that Miller created it after the fact, and that Miller is attempting to deceive the Court by attaching it.

The letter is dated June 6, 2008, and is addressed to Fernando Sanchez.[28] The letter purports to address a comment that Fernando Sanchez allegedly made at some point before the letter was written.[29] The obvious problem with this letter is that Fernando Sanchez was not Miller's attorney on June 6, 2008. Jeffrey Czar was Miller's attorney on June 6, 2008; Czar filed a motion to withdraw as counsel the same day.[30] On June 11, 2008, the Court held a hearing on the motion to withdraw, granted the motion, and appointed Fernando Sanchez as Miller's attorney.[31] Thus, Fernando Sanchez' first involvement in this case began five days after the date Miller's letter addressed to him was written. *The letter is clearly a fabrication. Miller lied about the letter.*

Although Miller lied about the letter, it is still possible that there was a plea offer that was not properly communicated to Miller. Last year, the Supreme Court determined that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."[32]

In this case, the record reflects that Jeffrey Czar attempted to speak with Miller about some issues that included a plea offer from the government.[33] Czar was unable to communicate the plea offer to Miller because Miller started to argue and get loud.[34] Czar's failure to communicate the offer to Miller was due exclusively to Miller's hostile behavior. Under the circumstances, it was not objectively unreasonable for Jeffrey Czar to not communicate the offer

---

[28] *Id*.
[29] *Id*.
[30] Cr. Dkt. No. 48 and attachments.
[31] Minute Entry, June 11, 2008 Hearing on Motion to Withdraw; Cr. Dkt. Nos. 52 & 53.
[32] Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012).
[33] Cr. Dkt. No. 173 at pp. 8-9.
[34] *Id*.

to Miller.  On the very day the problems occurred at a meeting between Czar and Miller, Czar filed a motion to withdraw as counsel.[35]   Thus, after reviewing the record, the Court finds that Jeffrey Czar acted reasonably in his handling of the plea offer.

Within a week of Czar's filing of the motion to withdraw, the Court had appointed Fernando Sanchez to represent Miller.  Thus, the Court must determine whether Fernando Sanchez provided constitutionally effective assistance regarding any plea offer that was available to Miller when Sanchez was appointed.  Here, the record reveals that Sanchez communicated the specifics of the plea offer to Miller.  Specifically, at the July 11, 2008 pretrial conference, Miller and his codefendant acknowledged the plea offers that had been presented to them by the government and said they understood the time they could serve if convicted.[36]   Because the record demonstrates that the plea offer was properly communicated to Miller, the Court finds that Miller's claims related to the communication of the plea offer are without merit.

In his supplemental affidavit, Miller adds the allegation that his counsel declined the plea offer without Miller's consent.[37]   The Court finds that this allegation is sufficiently tied to the allegations in the original motion regarding his counsel's handling of the plea offer to relate back to the filing of the original motion.  But, Miller's acknowledgement of the plea offer at the July 11, 2008 pretrial conference disproves this claim as well.  Miller himself acknowledged the plea offer and rejected it.  This claim is without merit.

**b.     Motion for Severance**

Miller claims that his attorney was ineffective for not seeking to sever his trial from that of his co-defendant.  The Court begins by noting that Miller's counsel necessarily considered the

---

[35] Cr. Dkt. No. 48 and attachments.
[36] Minute Entry of July 11, 2008 pretrial conference.
[37] Dkt. No. 5-1 at p. 2.

severance issue because his attorney filed and then withdrew the motion for a separate trial.[38]
Here the Court will not assess the reasonableness of the decision to withdraw the motion for
severance because the Court finds that Miller was not prejudiced by this decision.  Specifically,
the Court would not have granted a motion for severance even if his attorney had continued to
urge it.  The Court begins by noting the following statement from the Supreme Court:

> "[W]hen defendants properly have been joined under Rule 8(b), a district court
> should grant a severance under Rule 14 only if there is a serious risk that a joint
> trial would compromise a specific trial right of one of the defendants, or prevent
> the jury from making a reliable judgment about guilt or innocence."[39]

Miller argues that his attorney's statements in closing arguments that Ferrell Scott,
Miller's co-defendant, was guilty spilled over and incriminated Miller because the government's
evidence supporting the guilt of the two men overlapped.[40]  Miller further claims that in the wake
of his attorney's statements the jury could not erase those statements from their minds and could
have failed to make an individualized determination about each defendant's guilt.[41]  Even with
the benefit of hindsight, the Court is convinced that Miller's trial should not have been severed
from his co-defendant's trial.   First, it is highly unlikely that the statements made at the
conclusion of the trial would have been presented as a basis for a pre-trial severance.  But even if
Miller's counsel had argued that severance was warranted because Scott was guilty, the Court
would have denied the severance.  One defendant's belief that his co-defendant is guilty is not a
basis for severance.  Furthermore, the Court is unpersuaded that the jury was tempted to draw the
conclusion Miller argues they might have drawn.  The Court specifically admonished the jury to

---

[38] Cr. Dkt. No. 61; Minute Entry of July 11, 2008 pretrial conference.
[39] Zafiro v. United States, 506 U.S. 534, 539 (1993).
[40] Dkt. No. 1 at p. 9.
[41] Dkt. No. 1 at p. 9.

consider the guilt of each defendant separately,[42] and jurors are presumed to follow their instructions.[43] Therefore, the Court's instructions to the jury remedied Miller's concern.

Miller was not prejudiced by his attorney's decision to withdraw the motion for severance.  Had Miller's attorney not withdrawn the motion, the Court would have denied the motion.  Miller's claim related to his attorney's handling of the severance issue is without merit.

## 2.     Ineffective Assistance of Counsel During Trial

## a.     Failed to Challenge Experts/Identity of Substance/Amount of Substance

Miller claims his attorney's performance was deficient because he did not file a motion for judgment of acquittal based on insufficiency of the evidence as to the identity and amount of the seized substances.[44]  Specifically, Miller complains that scientific evidence of the substance's identity was not introduced even though an agent mentioned that the substance seized in one stop was sent to the lab.  In his supplement, Miller claims that he told his attorney to make sure he got the lab reports.[45]  Miller also claims that his attorney was ineffective regarding the amount of drugs *in the conspiracy* because he did not ask for a reweigh of the drugs without their wrappings.[46] Miller makes the related assertion that his attorney should have challenged the qualification of the DEA agents as experts.

First, the Court notes that someone may be convicted for a controlled substances conspiracy even if there are no actual drugs.  In *United States v. Burke*[47] the Fifth Circuit explained:

> A defendant may not be convicted of the possession or sale of drugs unless the defendant possesses or sells *actual* drugs.  However, factual

---

[42] Cr. Dkt. No. 91 at p. 15.
[43] United States v. Harper, 527 F.3d 396, 402-07 (5th Cir. 2008).
[44] Dkt. No. 1 at p. 5.
[45] Dkt. No. 5-1 at p. 1.
[46] Dkt. No. 1 at pp. 6-7; Dkt. No. 5-1 at p. 1.
[47] 431 F.3d 883 (5th Cir. 2005).

> impossibility does not preclude a conviction for conspiracy or attempt.  Because
> the act of conspiracy is complete upon the formation of an illegal agreement, a
> defendant can be convicted of conspiracy to aid in the distribution of drugs even if
> those drugs are fake.[48]

Therefore, the Court will only consider the identity-of-the-substance challenge as it relates to Miller's possession conviction.

Similarly, it follows from *Burke* that the amount of drugs in a conspiracy is not limited to the actual amount of drugs possessed.  Instead it is based on the amount of drugs the parties conspired to possess.   Under the facts of this case, it was reasonable for Miller's attorney to not seek a reweigh of drugs in order to attack the prosecution's conspiracy case against Miller.

Because Miller only challenged the amount of drugs under the conspiracy count, the Court need not address the amount of drugs in the possession count.  Nevertheless, the Court notes that Miller's attorney was entirely reasonable to not seek a reweigh of the drugs on the possession count.  If the attorney had sought a reweigh of the drugs seized on August 2, 2007, it is incredibly unlikely that a reweigh would have made a difference because the total weight of the drugs seized on August 2, 2007, was approximately 268 kilograms[49] and Miller was only charged with possessing in excess of 100 kilograms.

Miller's possession conviction was based on the August 2, 2007 seizure.  Rule 702 of the Federal Rules of Evidence provides that a person may qualify as an expert based on knowledge, skill, experience, training, or education.  At Miller's trial, the Court found that Agent Ford was qualified to testify as an expert on the issue of whether the substance seized on August 2, 2007 was marijuana.[50]  Miller's attorney did not object.[51]  Although Agent Ford mentioned that the laboratory confirmed that the substance was marijuana, Agent Ford also testified that it was *his*

---

[48] *Id*. at 886.
[49] Cr. Dkt. No. 177 at pp. 223-227.
[50] Cr. Dkt. No. 177 at p. 226.
[51] Cr. Dkt. No. 177 at p. 226.

*opinion* that the substance was "unmistakably marijuana."[52]  While it is true that the government did not introduce the laboratory report regarding the identity of the substance, the government is not required to provide the laboratory report to establish that a substance is marijuana.[53]  The government did present expert testimony regarding the identity of the controlled substance at issue and, beyond that, nothing more is required.

As to Miller's assertion that his attorney was ineffective for failing to challenge the qualification of Agent Ford as an expert, it is also without merit.  Miller has presented nothing to indicate that Agent Ford was unqualified to testify as an expert.  At Miller's trial, the Court determined that Agent Ford was qualified.  Now, after independently reviewing the record, the Court concludes once again that Agent Ford was qualified to testify as an expert regarding the identity of the substance seized on August 2, 2007.[54]  Miller's claims related to qualifications of the agents to testify as experts and the identity and quantity of the substance are without merit.

**b.    Failed to Ask a Witness Certain Questions**

Miller claims that his attorney was ineffective because defense counsel did not ask Shirley Knott certain questions regarding a wallet Miller allegedly lost.[55]  It is Miller's position that Shirley Knott's testimony on that topic would have supported the defense theory that someone else had access to Miller's information including identification and credit cards. According to Miller, this would have then supported his claim that he was not in Laredo in June 2007.  Although Miller states in his supplement that he told his attorney to ask Shirley Knott about evidence regarding a wallet and credit cards, Miller does not allege *when* he told his

---

[52] Cr. Dkt. No. 177 at p. 226.
[53] In fact, the lab report is often objectionable as hearsay and violative of the Confrontation Clause.
[54] Cr. Dkt. No. 177 at pp. 224-26.
[55] Dkt. No. 1 at pp. 9-10.

attorney to ask those questions.[56]   The record demonstrates that this conversation between Miller

and his attorney occurred after Miller testified (three days after Shirley Knott testified).[57]   This

interpretation is further supported by a separate section of Miller's § 2255 motion.   According to

Miller, his attorney did not realize he needed to examine Shirley Knott further *until after Miller

testified*.[58]   To be clear, there is no allegation that Miller's attorney's ignorance of this issue was

based on a lack of diligence on the part of the attorney.   Therefore, the Court need only evaluate

whether Miller's attorney acted reasonably when, after Miller testified, the attorney became

aware that Shirley Knott could possibly have information that would be helpful to the defense.

On the day Miller testified, Miller's attorney asked the Court to recall Shirley Knott, and

the Court denied that request.[59]   Because Miller's attorney diligently sought to obtain Shirley

Knott's testimony when he decided it might be relevant, the record does not support a finding

that Miller's counsel acted unreasonably.   Therefore, the Court rejects Miller's ineffective

assistance of counsel claim based on his questioning of Shirley Knott.

c.       **Failed to Call a Handwriting Expert**

Miller asserts that his attorney was ineffective for failing to present samples of Miller's

actual signature and to hire a handwriting expert to compare Miller's actual signature with some

signatures on motel documents from Laredo, Texas.   The evidence at trial was that an "Artis

Miller" registered at the Americana Inn in Laredo, Texas, on June 15, 2007, and checked out on

the 18th and then registered again on June 23rd and checked out on June 24th.   Miller denies

being there.   Significantly, there was no other evidence of any particular event occurring on

those dates in Laredo in furtherance of the drug conspiracy.   Nonetheless, Miller claims that if a

---

[56] Dkt. No. 5-1 at p. 1.
[57] Cr. Dkt. No. 178 at p. 238.
[58] Dkt. No. 1 at p. 14.
[59] Cr. Dkt. No. 178 at pp. 238-42.

handwriting expert had testified and his counsel had produced signature exemplars from Miller, that evidence would have shown that the signature was not Miller's and that, thus, Miller was not involved in the conspiracy during the time of these alleged motel stays.[60]

The relevant documents were primarily addressed by the manager from the Americana Inn.  The manager testified about the documents from the motel's records which included signatures of one "Artis Miller" who rented a room at the Americana Inn from June 15, 2007 to June 18, 2007 and again from June 23, 2007 to June 24, 2007.[61]

Regarding trial tactics and strategy the Fifth Circuit has stated:

"Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed . . . . A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."[62]

Here, Miller alleges that he "constantly advised" his attorney that he had not signed those documents and asked his attorney to hire a handwriting expert to compare the signatures.[63]  The type of opinion such an expert could provide is obvious.  However, Miller's counsel secured similar testimony from the motel manager.  In fact, the manager testified that some of the signatures even differed from each other.[64]  Apparently, the difference was obvious even to a lay witness.   In light of this, the Court finds that the decision to not pursue this defense in the manner Miller requested was a conscious and informed decision by Miller's counsel. Furthermore, even if a handwriting expert had testified that Miller was not the person who signed the documents, the potential benefit to Miller would have been limited because it would not have proven that Miller was not involved in the conspiracy.  It would have only shown that he was not

---

[60] Dkt. No. 1 at p. 11; Dkt. No. 5-1 at p. 2.
[61] Dkt. No. 177 at pp. 175-94.
[62] United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (internal quotation marks and citation omitted).
[63] Dkt. No. 5-1 at p. 2.
[64] Cr. Dkt. No. 177 at pp. 189-191.

the person who signed those documents.  But as there was no specific overt act tied to those dates, occurring in Laredo, the Court finds that Miller's counsel's decision to not present this evidence through an expert was reasonable.

Moreover, when the rest of the government's evidence is considered, the Court cannot find that Miller was prejudiced by his attorney's decision. Even if a handwriting expert had testified that Miller did not sign those documents, and the jury took that to mean that Miller was not in Laredo, Texas, during the second half of June, 2007, there was still ample evidence for them to find him guilty on the conspiracy charge.  Again, other than his presence in Laredo during June, this evidence was not specifically tied to any act by Miller in furtherance of the conspiracy.  Miller's challenge based on his attorney's decision to not hire a handwriting expert or present other examples of Miller's signature is without merit.

**d.      Failed to Investigate/Call Alibi Witnesses**

In regard to the June 23rd and 24th, 2007 hotel registration,  Miller claims that he was not in Laredo, Texas, at that time because he was in Louisiana for a family reunion.[65]  Miller asserts that his attorney was ineffective because he failed to investigate certain alibi witnesses who would have supported his claim that he was at the family reunion in Louisiana and that this failure prejudiced Miller because the jury did not hear this alibi testimony.[66]    Miller acknowledges that his attorney did contact some alibi witnesses in Texas, but he claims that the attorney did not contact other witnesses who (1) lived outside Texas and (2) were not immediate family members.[67]   In his supplement, Miller claims that he provided his attorney with

---

[65] Dkt. No. 1 at pp. 10-11.
[66] Dkt. No. 1 at pp. 10-11.
[67] Dkt. No. 1 at p. 10.

information *and the names* of several family members who could verify his presence at the family reunion.[68]

Recently, Miller filed a motion to expand the record and attached several documents including four affidavits from other people.   The affidavits may be relevant to this claim because all four state that Miller attended the family reunion in Louisiana in late June on the dates the prosecution argued he was in Laredo, Texas.

Before examining the reasonableness and prejudice prongs of Miller's claim.  The Court emphasizes that the issue of whether Miller was in Laredo, Texas, on June 23 and 24, 2007, was simply not an essential part of the prosecution's case.  Even if the prosecution had presented no evidence that Miller was in Laredo, Texas, during late-June 2007, the jury could have still convicted Miller based on the substantial additional evidence that was produced at trial. Furthermore, that additional evidence was in itself sufficient to sustain Miller's conviction.  The Court also emphasizes that this is not a failure to investigate an alibi defense.  Counsel did present the alibi defense by Miller's testimony and by the testimony of Miller's mother.  Again, the jury could have believed this testimony and still convicted Miller of the conspiracy count.

The Court, nonetheless, considers whether Miller's attorney was reasonable in his handling of alibi witnesses.  At trial, Miller testified that he attended the family reunion in Louisana.[69]   Furthermore, his mother testified that he attended the family reunion.[70] Additionally, according to Miller's own motion, his attorney contacted at least one other family member who lived in Texas,[71] but did not call that additional family member as a witness in Miller's trial.

---

[68] Dkt. No. 5-1 at p. 2.
[69] Cr.  Dkt. No. 178 at p. 200-01.
[70] Cr. Dkt. No. 178 at p. 220.
[71] Dkt. No. 1 at p. 10 ("Although counsel did contact some family members that lived in Texas . . . .").

Miller focuses his claim of ineffective assistance of counsel on his attorney's alleged failure to investigate certain unnamed out-of-state members of Miller's extended family. Interestingly, the evidence provided by Miller and the record in this case indicate that Miller's attorney did contact at least one out-of-state member of Miller's extended family. Specifically, the affidavit of Shirley Walker states that she was in contact with Miller's attorney. The 2007 invitation to the family reunion gave an address in Minden, Louisiana, for Shirley Walker,[72] and the affidavit provided by Shirley Walker purports to be from the "County of Webster Parish" in Louisiana.[73] The Court takes judicial notice that Minden, Louisiana, is located in Webster Parish, Louisiana. Therefore, the evidence indicates that Shirley Walker is from Louisiana. Furthermore, Miller's mother testified that Shirley Walker was her cousin and a cousin of Miller[74] (i.e. a member of Miller's extended family). Therefore, Shirley Walker bears two of the characteristics of the people Miller claims his attorney should have contacted. In her affidavit, Shirley Walker states that "prior to and during Artis's trial, which [Shirley Walker] attended, [Shirley Walker] advised counsel Sanchez several times that she would be willing to give a statement and[/]or testify on behalf of Artis."[75] The rest of her affidavit makes clear that she informed Miller's counsel that Miller could not have been in Laredo, Texas, from June 22 through June 24, 2007, because he was in Louisiana attending the family reunion.[76]

Regarding the investigation of witnesses, the Fifth Circuit has stated: "Defense counsel is not required to investigate everyone whose name happens to be mentioned by the defendant."[77] At the very least, Miller's attorney contacted (or was contacted by) three alibi

---

[72] Dkt. No. 14-6 at p. 4.
[73] Dkt. No. 14-6 at p. 1.
[74] Cr. Dkt. No. 178 at p. 233.
[75] Dkt. No. 14-6 at p. 1.
[76] Dkt. No. 14-6 at pp. 1-2.
[77] Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985) (internal quotation marks and citation omitted).

witnesses: Miller's mother, at least one other in-state relative, and Shirley Walker. The Court finds that this amount of investigation was reasonable. Furthermore, the affidavit of Shirley Walker makes clear that the attorney's decision not to call her was conscious and informed. The Court finds that counsel's choice to call a single alibi witness was reasonable. The conclusion that the actions of Miller's attorney were reasonable is supported by the reality that, in light of the other evidence presented at trial that Miller was involved in the conspiracy, the government did not need to prove that Miller was in Laredo, Texas, on June 23 and 24, 2007.

Furthermore, the Court notes that even if Miller's attorney's investigation of alibi witnesses and decision not to call alibi witnesses was unreasonable, Miller has not demonstrated that he was prejudiced by those decisions. First, as noted above, both Miller and his mother testified that he was attending a family reunion in Louisiana at the time the government claimed he was in Laredo, Texas. Therefore, evidence that Miller attended the reunion was before the jury.

Second, to this day, Miller has never identified by name a single alibi witness that he claims his attorney failed to contact.[78] He did not identify these witnesses in his original motion, he did not identify them in his supplement, *and he even failed to identify them in his motion to expand the record*. To be clear, Miller has never stated that the four affiants are the same people he told his attorney to contact. This failure seriously undermines the possibility of Miller showing prejudice because his mother testified that there were "[m]aybe fifty to one hundred" people at the family reunion.[79] Furthermore, Shirley Walker's statement regarding her communications with Miller's attorney precludes the possibility that she was one of the uninvestigated witnesses. Because the group of potential alibi witnesses is so large, the Court

---

[78] *Cf.* Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001).
[79] Cr. Dkt. No. 178 at 232.

cannot assume that the remaining three affiants are the same people Miller told his attorney to contact.

Third, the affidavit of Marcile Hines is wholly unavailing to Miller.  It was executed on February 11, 2013, and it states that "if called upon as a witness, [Marcile Hines] **will** testify . . . ."[80]  Marcile Hines's affidavit is forward looking and fails to state that back at the time of trial, she was willing to testify at Miller's trial.  Because Marcile Hines's affidavit does not indicate that she would have been willing to testify at Miller's trial, it cannot be relied upon for a showing of prejudice.[81]

Fourth, Miller cannot show prejudice by relying on the affidavits of Lessie Fritz, Marcile Hines and Sheena Harris.  Assuming without deciding that Miller's attorney did not contact these three affiants (it is possible that they were among the family members the attorney contacted) the record indicates that they would not have been called to the stand even if they had been investigated.   As noted above, Shirley Walker stated in her affidavit that Miller's attorney did not call her even though she told the attorney that she was ready and willing to testify. Considering the fact Miller's attorney opted not to call Shirley Walker, an out-of-state member of Miller's extended family, to the stand even though she attended the trial, the Court finds that it is highly unlikely that the attorney would have called the three other affiants as witnesses.

Fifth, as already emphasized, whether Miller was in Laredo, Texas on June 23 and 24, 2007, was related to the conspiracy charge, and proving Miller's presence in Laredo on those

---

[80] Dkt. No. 14-4 at p. 1 (emphasis added).
[81] *Cf.,* Gregory v. Thaler, 601 F.3d 347, 352 (5th Cir. 2010).

dates was not essential to the prosecution's case.  Regarding the prejudice element of an alibi witness claim, the Fifth Circuit stated in *Schwander v. Blackburn*,[82]

> Even if the failure to interview or call [the defendant's] sister as a witness constituted an unreasonable lapse on the part of counsel, [the defendant] would be hard pressed to show prejudice under these facts.  The alibi defense was corroborated to some degree by testimony from an eyewitness who saw [the defendant] packing his car before his trip. Considering all the evidence presented at his trial, however, [the defendant] has not shown that there is a reasonable probability that, had his sister testified, the factfinder would have had a reasonable doubt respecting guilt.[83]

Similarly, the Court finds that even if the four affiants had testified that Miller was not in Laredo on June 23 and 24, 2007, the jury would still not have had a reasonable doubt regarding Miller's participation in the conspiracy.  Therefore, the Court finds that Miller was not shown that he was prejudiced by his attorney's alleged failure to investigate and call alibi witnesses.

e.    **Failed to Present Jail Logs**

Miller also claims that his attorney was ineffective for failing to present jail logs demonstrating that Miller was in jail "from late Janaury (sic) to April 2007."[84]  Miller attaches a document which indicates that Miller was in jail from January 30, 2007 to April 9, 2007.[85]

The Court first notes that Miller appears to be under the impression that he may not be held responsible for any actions undertaken as part of the conspiracy during the time he was in jail.  Miller misunderstands the law.  Because a conspirator may be held responsible for the actions of co-conspirators that occur before he withdraws from the conspiracy, a conspirator may be held responsible for actions committed while he is incarcerated.[86]  Furthermore, conspirators often actively participate in conspiracies from jail.  Therefore, the Court rejects Miller's

---

[82] 750 F.2d 494 (5th Cir. 1985).
[83] *Id*. at 500-01 (internal quotation marks and citations omitted).
[84] Dkt. No. 1 at p. 12.
[85] Dkt. No. 1 at p. 21.
[86] In this case, the jury was given a *Pinkerton* instruction.

contention that his incarceration necessarily limits the amount of drugs which could be attributed to him.

Turning to the failure to present documentation that he was in jail, Miller alleges that he provided his attorney with documentation of his incarceration and told his attorney to address this issue.[87]   Therefore, assuming without deciding that Miller really did provide this documentation to his attorney, the Court finds that the decision of Miller's attorney to not present the documentation was both conscious and informed. The Court will now consider whether it was reasonable for Miller's attorney to not present the documentation.  Here, Miller testified that he was in jail for three months, from January 30, 2007, until early April.[88]   In his § 2255 motion, Miller admits that this evidence was presented: "[Miller] had presented an alibi that clearly indicated that [Miller] had been in jail at the time that Johnny Brown testified that he had a conversation with [Miller].[89]   Because evidence regarding the dates of Miller's incarceration was presented to the jury, the Court cannot find that his attorney's decision to not present the jail logs, themselves, was objectively unreasonable.  This claim is without merit.

**f.    Failed to File Motion for Judgment of Acquittal**

At several points in his motion, Miller claims that his attorney was ineffective for not filing a motion for judgment of acquittal.  He further claims that he was prejudiced by the standard of review on appeal because the issues were not preserved.

As to the conspiracy conviction, the Fifth Circuit already addressed this issue and concluded:  "[E]ven if Scott and Miller had preserved the issue for appeal, we reject it because a rational trier of fact could have found that the evidence produced at trial established guilt beyond

---

[87] Dkt. No. 1 at p. 12; Dkt. No. 5-1 at p. 2.
[88] Cr. Dkt. No. 178 at p. 196.
[89] Dkt. No. 1 at pp. 14-15.

a reasonable doubt for the conspiracy charges."[90]   The Court will not revisit this issue that has been decided by the Fifth Circuit.

Turning to the possession conviction, Miller has not demonstrated that he would have been entitled to a judgment of acquittal on the possession count.   A judgment of acquittal is proper if the evidence is insufficient to sustain a conviction.[91]   To find Miller guilty on the possession count, the jury had to find: (1) that Miller knowingly possessed a controlled substance; (2) that the substance was in fact marijuana; (3) that Miller possessed the substance with the intent to distribute it; and (4) that the quantity of the substance was in excess of 100 kilograms.[92]

In this case, Border Patrol Agent Sepulveda testified that Miller was the tractor-trailer driver who absconded on August 2, 2007.[93]   She testified that the driver of the tractor-trailer fled the secondary inspection area in his tractor-trailer, tried to back over her vehicle with his tractor-trailer when she pursued him, and then disappeared into the brush.[94]   She also testified the marijuana was found in the sleeper compartment of the tractor-trailer. The Court finds that the extreme actions taken by the driver to evade law enforcement and the fact that the drugs were found in the sleeper of the tractor-trailer he was driving are sufficient evidence of the driver's knowledge.   Furthermore, Special Agent Molly Gonzalez, from the Drug Enforcement Administration, testified that a phone recovered from the truck contained the following contacts: the phone number for Miller's wife was listed in the phone as "baby" and the phone number for Miller's sister was listed in the phone as "sis."[95] Furthermore, a number that was listed several

---

[90] Cr. Dkt. No. 196.
[91] FED. R. CRIM. P. 29(a).
[92] Cr. Dkt. No. 91 at pp. 11-12.
[93] Cr. Dkt. No. 177 at p. 282.
[94] Dkt. No. 177 at pp. 274-96.
[95] Cr. Dkt. No. 178 at pp. 69-73.

times in missed, received, and dialed calls belonged to Miller's mother.[96]   Additionally, Agent Ford testified that the substance recovered from the truck was "unmistakably marijuana" and that the weight was approximately 268 kilograms.[97]   Finally, the Fifth Circuit has stated that the "[i]ntent to distribute may be inferred from the possession of a quantity of drugs too large to be used by the defendant alone."[98]   To be clear, 268 kilograms of marijuana is not a personal use amount of marijuana.   In summary, the Court finds that there was sufficient evidence to support the jury's verdict on Miller's possession charge.   Even if Miller had moved for a judgment of acquittal it would have been denied.   Therefore, Miller cannot show prejudice and his ineffective assistance of counsel claim based on his attorney's failure to file a motion for judgment of acquittal is without merit.

### 3.      Ineffective Assistance of Counsel on Appeal

Miller claims that he received ineffective assistance of counsel on appeal because his attorney failed to present portions of the record and photographic exhibits to the Fifth Circuit.[99] The Fifth Circuit's opinion makes clear that this failure precluded its review of suppression hearing and subsequent in-court identification.[100]   But even assuming that it was unreasonable for appellate counsel to fail to provide the documents necessary to support the issues raised on appeal, Miller has not shown that he was prejudiced by this failure.   His conclusory assertion that if the Fifth Circuit would have had those documents "it would have been obliged to grant relief after finding that the photos were indeed suggestive and . . . had tainted the in-court

---

[96] Cr. Dkt. No. 178 at pp. 73-75.
[97] Cr. Dkt. No. 177 at pp. 223-27.
[98] United States v. Kates, 174 F.3d 580, 582 (5th Cir. 1999) (citation omitted).
[99] Dkt. No. 1 at p. 13; Dkt. No. 5-1 at p. 2.
[100] Cr. Dkt. No. 196.

identification[,]"[101] does not demonstrate that this Court handled the suppression issue improperly.  This claim is without merit.

## D.      Errors by the Court

Miller claims that the Court made several errors in his case.  To the extent that Miller failed to raise these issues on direct appeal, they are likely procedurally barred.  But because the Court has not provided Miller with an opportunity to argue why these claims are not procedurally barred, the Court will consider the merits of his claims.[102]  The Court has organized claims into two groups: (1) errors during trial, and (2) errors during sentencing.

## 1.      Errors During Trial

## a.      Denial of Witness

Miller claims that the Court erred when it did not permit Defendant to recall Shirley Knott.[103]  District courts have broad discretion on the issue of whether witnesses will be permitted to be recalled:

> The order in which evidence is to be received, the recalling of witnesses to the witness stand . . . and the acceptance or rejection of rebuttal testimony are matters which are necessarily committed to the broad discretion of the trial court, the exercise of which will not be disturbed upon appeal in the absence of a clear showing of abuse.[104]

Here, Miller argues that Shirley Knott would have corroborated Miller's testimony that his wallet was missing and other people had access to his wallet and the cards that were in it.  Specifically, Miller claims that Shirley Knott would have testified that she had cancelled credit cards after Miller lost his wallet.

---

[101] Dkt. No. 1 at p. 13.
[102] Prieto v. Quarterman, 456 F.3d 511, 519 (5th Cir. 2006).
[103] Dkt. No. 1 at p. 14.
[104] Johnson v. United States, 207 F.2d 314, 322 (5th Cir. 1953).

Before addressing this claim on the merits, further background is necessary. Shirley Knott testified in the government's case on July 25, 2008, a Friday. On cross examination, counsel was permitted to fully examine Knott. The cross examination was not limited to areas raised on direct examination of the witness. Upon completion of her testimony, Knott returned to the Dallas area. On the following Monday, after Miller's testimony, counsel asked to recall Knott to the stand. Counsel did not have Knott under subpoena, nor was one requested for her appearance. Rather, counsel requested that she testify telephonically.[105]

After reviewing the record, the Court finds that it was within its discretion to not allow Shirley Knott to be recalled telephonically. A critical part of any jury trial is the jury's assessment of a witness's credibility. The jury had observed Knott in the government's case, and it would have been equally vital for them to observe her had she testified in Miller's case. A jury is entitled to believe all, some, or none of a witness's testimony and part of the determination is made based on the witness's demeanor in connection with each question and answer. A telephonic examination would have deprived the jury of this critical assessment. Therefore, the claim that the Court abused its discretion in not permitting Shirley Knott to be recalled telephonically is without merit.

**b.     Jury Instructions**

Miller asserts that the Court's jury instructions were erroneous. First, Miller complains that the Court did not present an alibi instruction for the conspiracy charge for the time that Miller was in jail.[106]  Miller's recollection of alibi-instruction discussion is not accurate. Although Miller's counsel did request an alibi instruction for the conspiracy count, that request was based on Miller's alleged planning of and later presence at a family reunion outside of

---

[105] Cr. Dkt. No. 178 at p. 238.
[106] Dkt. No. 1 at pp. 14-15.

Laredo in late-June, 2007.[107]  Miller's counsel did not argue that Miller was entitled to an alibi instruction based on dates of Miller's incarceration conflicting with Johnny Brown's timeline. To be clear, the argument Miller now advances was not made at trial.  The Court did decline to give an alibi instruction regarding the events of June 2007, because Miller's absence from Laredo in late-June 2007 would not have precluded his involvement in the conspiracy during that time.  Therefore, the Court did not err in rejecting the alibi-instruction-argument his attorney made at trial. It was proper to omit the alibi instruction as it was presented during trial as to the conspiracy count.  This claim is without merit.

Second, Miller claims the instruction that the defendant was presumed innocent "until the Government proves its case beyond a reasonable doubt" signaled to the jury that the government would ultimately prove its case.[108]  Miller's recollection of the jury instruction is not correct. The jury instruction actually stated in relevant part:

> The indictment, or formal charge, against the defendant is not evidence of guilt.  Indeed, each defendant is presumed by the law to be innocent.  The presumption of innocence means that each defendant starts the trial with a clean slate.  In other words, the defendant is presumed by you to be innocent throughout your deliberations until such time you as a jury are satisfied that the government has proven the defendant guilty beyond a reasonable doubt.  The law does not require a defendant to prove his innocence or produce any evidence at all.  The government has the burden of proving a defendant guilty beyond a reasonable doubt, and if the government fails to do so, you must acquit the defendant.  The presumption of innocence alone is sufficient for the acquittal of a defendant.[109]

It is clear that Miller takes the language of the instructions and strings the words together in a manner that was never presented to the jury.  This claim is without merit.

---

[107] Cr. Dkt. No. 178 at pp. 357-60.
[108] Dkt. No. 1 at pp. 15-16.
[109] Cr. Dkt. No. 91 at p. 2.

c.      **Handling of Jury Note**

Miller complains about the Court's handling of a jury note.[110]   Miller asserts that the

Court incorrectly characterized the information requested in the jury's note as "additional

evidence."   The jury's note stated:

> When and where was Mr. Miller arrested and is there a booking document with
> fisical (sic) discriptions (sic) (scars, tattoos (sic), etc.)[111]

The Court responded:

> Ladies and Gentlemen,
>         The evidence that you may consider is that which was presented during
> the trial.   The Court is unable to provide you with additional evidence at this
> stage.     Please continue your deliberations in accordance with the Court's
> instructions.[112]

Contrary to Miller's characterization of the Court's response, the Court did not tell the jury that

the information they were requesting was "additional information."   Instead, the Court properly

instructed the jury that they were only permitted to consider the evidence that had been presented

during trial.   If, as Miller states, "the requested information had been adduced during trial[,]"[113]

the Court's instruction made clear that the jury was free to consider that information.   On the

other hand, if that information had not been adduced during trial, the Court properly declined the

jury's request for additional information.   Miller's challenge to the Court's response to the jury's

note is without merit.

---

[110] Dkt. No. 1 at p. 16.
[111] Cr. Dkt. No. 92.
[112] Cr. Dkt. No. 93.
[113] Dkt. No. 1 at p. 16.

### 2.        Errors During Sentencing

### a.        Obstruction of Justice Enhancement

Miller claims that the Court erred in giving him an "obstruction of justice" enhancement or upward departure for lying on the stand.[114]   Miller highlights the Court's statement at sentencing that it believed the other witnesses who testified to be truthful.[115]   From this alleged statement, Miller argues that his mother's testimony was consistent with his own testimony and that it did not make sense that the Court believed Miller's mother and disbelieved Miller's "identical testimony."   After reviewing the relevant portion of the sentencing transcript, the Court finds that Miller is confused.   To be clear, the Court stated "the obstruction of justice under 34 is because of his testimony at trial where he very plainly, very clearly denied being present on that occasion, [August 2, 2007]."   The Court further stated it "found the other witnesses as to that incident to be truthful and Mr. Miller not to be truthful."[116]   This claim that the Court erred in giving him a greater sentence for obstruction of justice is without merit.

### b.        Amount of Drugs Under the Guidelines

Miller asserts that the Court improperly held him responsible for a quantity of marijuana in excess of 1,000 kilograms.[117]   Miller correctly points out that the Court relied upon the jury's finding that Miller conspired to possess with intent to distribute in excess of 1,000 kilograms of marijuana.[118]   Because the jury specifically found that Miller conspired to possess with intent to distribute in excess of 1,000 kilograms of marijuana,[119] it was appropriate for the Court to rely on

---

[114] Dkt. No. 1 at pp. 16-17.
[115] Cr. Dkt. No. 176 at p. 11.
[116] Cr. Dkt. No. 176 at pp. 10-11.
[117] Dkt. No. 1 at pp. 17-18.
[118] Cr. Dkt. No. 176 at p. 21.
[119] Cr. Dkt. No. 95.

the jury's finding regarding the amount.  The Court finds that Miller's argument on this issue is without merit.

**III.    CONCLUSION**

After considering the motion, record, and relevant authorities, the Court finds that all of the claims in Miller's § 2255 motion are without merit and **DISMISSES** the motion in its entirety with prejudice.  Should Miller seek a certificate of appealability, the same is **DENIED**.

IT IS SO ORDERED.

DONE this 15th day of May, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE